UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
CALVIN RIGGINS,                     :
                                    :
            Plaintiff,              :    Civ. No. 18-12877 (FLW) (LHG)
                                    :
        v.                          :
                                    :    **OPINION**
GRIFFIN BANOS et al.,               :
                                    :
            Defendants.             :
_____ :

**FREDA L. WOLFSON, U.S.D.J.**

## I. INTRODUCTION

Plaintiff, Calvin Riggins ("Riggins" or "Plaintiff"), is a pretrial detainee presently held at the Middlesex County Adult Correction Center, in New Brunswick, New Jersey. He seeks to proceed *pro se* with a Complaint asserting violations of his civil rights under 42 U.S.C. § 1983. (*See* Compl., ECF No. 1.) The Court now screens the Complaint under 28 U.S.C. §§ 1915(e) and 1915A. For the reasons stated herein, the Complaint is dismissed.

## II. BACKGROUND

### A. Underlying Circumstances

Riggins asserts that, on the morning of July 3, 2018, he and his fiancée, Elvia Torres ("Torres") were at her residence, located at 384 Hoffman Station Road, in Monroe Township. (ECF No. 1 at ECF p. 6.) He alleges that, around 5:30 a.m., officers Griffin Banos ("Banos"), Jabazz Spence, and Sgt. Sloan ("Sloan"), of the Monroe Township Police Department, entered the house and "terrorize[d], unlawfully arrested and physically ass[au]lted" him. (*Id.*) Riggins contends that the officers were executing warrants obtained by Banos and signed by Judge Dennis Nieves, including "body warrants" for Riggins and Torres and a "no-knock warrant" for

the second-floor apartment at 384 Hoffman Station Road. (*Id.* at ECF p. 7.) Riggins alleges that Banos and another officer improperly questioned Torres about her relationship with Riggins and performed a *Terry* frisk of her without the presence of a female officer. (*Id.* at ECF p. 8.) Riggins asserts that Torres consented to a search of her second-floor bedroom "out of fear of being 'terrorized.'" (*Id.*) He claims that the officers never told Torres that they had a warrant for her. (*Id.*) Riggins asserts that Banos and Sloan ordered that he be stripped of his clothes and gave him some "over-sized shorts" to wear. (*Id.*)

Riggins was apparently taken to the emergency room at Robert Wood Johnson Hospital in New Brunswick, where, he alleges, he was "handcuffed next to a male patient who[] sounded awfully ill and tempered." (*Id.* at ECF p. 9.) Riggins claims he was injured when that other patient fell on him, and that Sloan and another officer "laughed and asked was I okay." (*Id.*) He explains that he begged the officers to take him to a different hospital, but was apparently ignored. (*Id.*) He further contends that emergency medical workers advised that he should be taken to a medical care facility after determining that he had "been exposed to high levels of phytenol,"[1] but that "the defendants did not follow Monroe EMT workers instructions instead plaintiff was returned to Monroe Police Department for processing." (*Id.* at ECF pp. 9, 11.)

**B. The Complaint**

Riggins commenced this action by filing a Complaint under 42 U.S.C. § 1983 on August 16, 2018. (ECF No. 1.) I construe the Complaint as seeking to assert constitutional claims, on behalf of both himself and Torres, for unlawful search and seizure and excessive force under the Fourth Amendment, failure to provide a *Miranda* warning under the Fifth Amendment, inadequate medical care under the substantive Due Process Clause of the Fourteenth

---

[1] I assume that "phytenol" may be a reference to fentanyl, the powerful opioid painkiller.

Amendment, selective enforcement under the Equal Protection Clause of the Fourteenth Amendment, failure to protect, and supervisory liability, as well as tort claims under state law for assault and sexual harassment. (*See id.*) He seeks injunctive relief, as well as compensatory and punitive damages. (*Id.* at ECF pp. 11–12.)

The action was initially administratively terminated, as the Complaint included neither the required filing fee nor an application to proceed *in forma pauperis*. (ECF No. 3.) Riggins subsequently submitted a proper *in forma pauperis* application, and the case was reopened. (ECF Nos. 4 & 5.) The Complaint now must be screened under 28 U.S.C. §§ 1915(e) and 1915A.

### III. STANDARD OF REVIEW

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801–810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review prisoner complaints when the prisoner (1) is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), (2) seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A, or (3) asserts a claim concerning prison conditions, *see* 42 U.S.C. § 1997e(c). The PLRA directs district courts to sua sponte dismiss claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012); *see also Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)). Under Federal Rule of Civil Procedure 8, a complaint must include "a short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has explained that, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

*Pro se* pleadings, as always, will be liberally construed. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972); *Glunk v. Noone*, 689 F. App'x 137, 139 (3d Cir. 2017). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### IV.     ANALYSIS

The largely conclusory allegations of the Complaint are insufficient to state any constitutional claim under the pleading standard set forth in *Iqbal* and *Twombly*. First, a large portion of the factual allegations seem to relate to acts allegedly performed against Torres. Riggins listed Torres as a plaintiff on the form Complaint, and, in his cover letter, he stated that he was "submitting this complaint on behalf of [himself] and [his] fiancée Elvia Torres who[] currently has power of Attorney of [his] outside affairs." (ECF No. 1-1.) Riggins cannot assert claims "on behalf of" Torres. "Although an individual may represent herself or himself pro se, a

4

non-attorney may not represent other parties in federal court." *Murray ex rel. Purnell v. City of Philadelphia*, 901 F.3d 169, 170–71 (3d Cir. 2018). In any case, if Torres were to proceed as a plaintiff in this action, she would have to either pay the required filing fee or independently obtain approval to proceed *in forma pauperis*. Accordingly, all claims concerning alleged violations of Torres's rights will be disregarded as improperly asserted.

Turning to Riggins's search and seizure claims, the Fourth Amendment guarantees a right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. While "warrantless searches . . . are *per se* unreasonable under the Fourth Amendment," *United States v. Silveus*, 542 F.3d 993, 999 (3d Cir. 2008), Riggins acknowledges that the defendant officers had warrants for both him and the residence that was raided, (*see* ECF No. 1 at ECF p. 7). Government officials are shielded by the doctrine of qualified immunity from liability for official actions that are objectively legally reasonable. *See Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner . . . ." *Id.* An officer will not be protected from liability, however, if "the warrant was 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* at 547 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)). "[T]he threshold for establishing this exception is a high one . . . ." *Id.* Thus,

> a plaintiff may succeed in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: (1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a

5

>   warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause.

*Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir. 2000) (internal quotation marks omitted); *see also Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) (applying same test to search warrant). *See generally Franks v. Delaware*, 438 U.S. 154 (1978).

While Riggins makes the conclusory assertion that the warrants in question were based on a "maliciously false affidavit" from Banos, he includes no factual allegations in support of such an argument, such as identifying the content of the purported affidavit or explaining in what ways it was allegedly false. (*See* ECF No. 1 at ECF p. 5.) He thus fails to identify any false statements or omissions that were material in obtaining the warrants despite a lack of probable cause. Accordingly, the claims for unlawful search and seizure are dismissed upon screening. Riggins simply does not make factual allegations sufficient to plead a plausible claim that the warranted search and seizures violated his constitutional rights.

The Fourth Amendment also protects the right of those seized by law enforcement not to be subjected to excessive force. *See Graham v. Connor*, 490 U.S. 386, 394 (1989); *Groman v. Township of Manalapan*, 47 F.3d 628, 633–34 (3d Cir. 1995). While the power to effect an arrest or investigatory stop includes the implicit right to use some degree of physical force, such force must be reasonable, as determined with "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted); *see also Groman*, 47 F.3d at 634. This fact-intensive inquiry includes examination of "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *Groman*, 47 F.3d at 634. Within the Third Circuit, courts

consider the reasonableness of the use of force in light of all relevant facts and circumstances surrounding it—not just the circumstances at the moment of arrest. *See Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004).

Riggins fails to plead an excessive-force claim, as he does not specifically allege that any defendant used any force against him. (*See* ECF No. 1.) Instead, he simply makes the conclusory allegation that police officers "physically assaulted plaintiff despite plaintiff being in full submission on his stomach on the upper bathroom common facility floor and the assault continued after plaintiff had been handcuffed." (*Id.* at ECF p. 6.) Without any facts identifying the degree of physical force allegedly used upon Riggins, he fails to state a plausible claim for excessive force, and this claim is dismissed upon screening.[2]

Next, Riggins alleges that defendants "fail[ed] to Mirandize" him. (*Id.* at ECF p. 11.) "Questioning a plaintiff in custody without providing a *Miranda* warning is not a basis for a § 1983 claim as long as the plaintiff's statements are not used against her at trial." *Renda v. King*, 347 F.3d 550, 557–58 (3d Cir. 2003). Riggins has not made any allegations concerning questioning prior to a *Miranda* warning nor any statements he may have given to police. He has provided no indication that such statements may have been used against him during any criminal trial. Accordingly, this claim is dismissed upon screening.

Riggins further seems to allege that he was provided inadequate medical treatment. An incarcerated plaintiff may assert a § 1983 claim for violation of the Eighth Amendment where institutional staff have provided inadequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976). A pre-trial detainee, though not within the scope of the Eighth Amendment, may

---

[2] It appears from the Complaint that Riggins may have been taken to the hospital because officers or medical technicians believed he had been exposed to fentanyl during the raid, unrelated to any alleged force, excessive or otherwise, used upon Plaintiff. (*See* ECF No. 1 at ECF p. 11.)

assert the same type of claim, with the same standard of review, under the Due Process Clause of the Fourteenth Amendment. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581–82 (3d Cir. 2003). A plaintiff asserting a § 1983 claim for inadequate medical care must show the existence of a serious medical need and that facility staff demonstrated deliberate indifference to that medical need. *Natale*, 318 F.3d at 582.

Riggins's conclusory statements concerning medical care are insufficient to state a § 1983 claim for inadequate medical care. First, although Riggins recounts that officers took him to the emergency room at Robert Wood Johnson Hospital, he does not allege that he suffered any particular injury or explain why he needed medical treatment. Thus, he fails to allege that he had a serious medical need at that time. Furthermore, there is no factual allegation that officers denied Riggins medical treatment. Indeed, Riggins indicates that officers took him to a hospital emergency room, and it was Riggins who, after another patient allegedly fell on him, "removed his oxygen stat and begged the defendants to get me out of there to another hospital." (ECF No. 1 at ECF p. 9.) These allegations do not suffice to plead a claim for inadequate medical treatment, and the claim is dismissed upon screening.

Finally, Riggins seems to assert a claim for selective enforcement or violations of his equal-protection rights. Establishing a selective-enforcement claim requires a plaintiff to show treatment different from other, similarly situated individuals and "that this selective treatment was based on an 'unjustifiable standard, such as race, or religion, or some other arbitrary factor, . . . or to prevent the exercise of a fundamental right.'" *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting *Holder v. City of Allentown*, 987 F.2d 188, 197 (3d Cir. 1993)). Thus, a plaintiff must allege that acts by law enforcement "(1) had a discriminatory effect and (2) were motivated by a discriminatory purpose." *Bradley v. United States*, 299 F.3d 197, 205 (3d Cir.

2002); *see also Patterson v. Strippoli*, 639 F. App'x 137, 144 (3d Cir. 2016). Establishing discriminatory effect requires that a plaintiff was a member of a protected class who received different treatment than similarly situated persons in an unprotected class. *Bradley*, 299 F.3d at 206. A plaintiff must show discriminatory purpose by demonstrating that the defendant took the challenged action "at least partially because the action would benefit or burden an identifiable group." *Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 548 (3d Cir. 2011); *see also Iqbal*, 556 U.S. at 676–77 (finding that stating discrimination claim requires pleading facts that show challenged policy was adopted "not for a neutral, investigative reason but for the purpose of discriminating").

Riggins has not included any allegations tending to plead a plausible equal-protection claim. Essentially, he seems to aver that he was subjected to selective enforcement because, following the police raid, only he was arrested, and not Torres. "[W]hat," he asks, "made the contraband found inside the 'suspect's' 2nd floor apartment more likely to belong to plaintiff and less likely to belong to his fianc[ée] Elvia Torres?" (ECF No. 1 at ECF p. 10.) He does not make at all clear, however, in what way he believes his arrest had a discriminatory effect or resulted from a discriminatory purpose. (*See id.*) Riggins's speculation that "[a]ll of the defendants . . . could have ill-will or spite against Plaintiff and Elvia Torres, i.e. someone he has never met e.g. a member of a particular gender, ethnic or racial group" is insufficient to plead a claim for violation of the Equal Protection Clause. (*See id.*) Accordingly, this claim is dismissed.

As Riggins has pleaded no violation of his constitutional rights, his claims for failure to intervene or supervisory liability must also fail. *Santiago v. Warminster Township*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (explaining that "supervisors can be liable if they established and

maintained a policy, practice or custom which directly caused the constitutional harm, [or] . . . if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations"); *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) ("A police officer may bear liability under § 1983 if the officer "fails or refuses to intervene when a constitutional violation . . . takes place in his presence.").

## CONCLUSION

For the foregoing reasons, the Complaint in this matter is dismissed upon initial screening under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A. Riggins may submit a proposed amended complaint that addresses the deficiencies identified herein within thirty (30) days. An appropriate order follows.


DATED: April 30, 2019                                      /s/ Freda L. Wolfson
                                                            FREDA L. WOLFSON
                                                            United States District Judge